**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO**
Bankruptcy Judge Elizabeth E. Brown

| | |
|---|---|
| In re: ) | |
| ) | |
| RICHARD J. DRYJA ) | Bankruptcy Case No. 09-29007 EEB |
| ) | Chapter 13 |
| ) | |
| Debtor. ) | |

_____

**ORDER**
_____

THIS MATTER comes before the Court on Susan Noeske's Motion for Relief From Automatic Stay ("Motion") and the objections filed by the Debtor and Harvey Sender, the former Chapter 7 trustee (the "Trustee"). The movant consented to extend the stay to allow the parties to brief the question raised by this Motion. At issue is whether a bankruptcy court should grant stay relief to allow a divorce court to continue with its action to divide marital property when some of the property presently titled in the non-debtor spouse's name may be subject to an avoidance action on the basis of a fraudulent transfer theory. Having reviewed the parties' briefs, the Court hereby FINDS and CONCLUDES:

**I. Background**

Movant Susan Noeske ("Noeske") is the Debtor's estranged wife by common law marriage. Debtor and Noeske have two minor children. Prior to the filing of Debtor's bankruptcy case, Debtor filed a state court action seeking to allocate parental responsibilities. Noeske converted that action into a dissolution of marriage action, which is currently pending (but stayed) in Arapahoe County District Court, Case No. 2008CV2056 (the "Divorce Action"). Prior to the bankruptcy filing, the state court had already entered orders on maintenance and child support, but had not yet entered a final order on the division of marital property. A final hearing in the Divorce Action is scheduled for June 17, 2010.

Debtor filed his Chapter 7 petition on September 11, 2009. Debtor's Schedule A lists a residence, an office building and an interest in vacant land with a collective value of $2.165 million. The secured debt on the residence and office building, however, is in Noeske's name only. Debtor also scheduled ownership of "equitable title" to several motor vehicles that are titled in Noeske's name only, including a Ford Thunderbird, Hummer H-1 and Kaiser Darren. The Trustee has alleged that the Debtor and his estranged wife engaged in prepetition fraudulent transfers of some of these assets in order to frustrate the collection attempts of the Debtor's creditors. To date, however, no fraudulent transfer action has been filed in the bankruptcy court.

On November 11, 2009, Noeske filed her Motion to obtain relief from the stay to continue the Divorce Action in order to divide the marital property. The Debtor filed an

objection to the Motion, arguing relief should not be granted because it would purportedly allow the state court to determine what is property of the estate. The Trustee objected to the Motion on similar grounds, but shortly after the preliminary hearing, the Debtor voluntarily converted his case to a Chapter 13 proceeding. As a result, the Trustee has lost his standing to pursue his objection.

## II. Discussion

Section 362(d)(1) permits relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). Nothing in the Bankruptcy Code defines "cause." Consequently, relief based on a finding of cause "is a discretionary determination made on a case by case basis." *In re Busch*, 294 B.R. 137, 140 (10th Cir. BAP 2003). The burden is on the moving party to make an initial showing of "cause" for relief from the stay. *Id.* The burden then shifts to a debtor to demonstrate why the stay should remain in place. *Id.* at 141.

When determining whether to lift the stay to permit pending litigation in another forum, courts consider several factors, often referred to as the "*Curtis* factors." Those factors are: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms. *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984). "Not all of these factors will be relevant in every case . . . [a]nd the court need not give equal weight to each factor." *In re Taub*, 413 B.R. 55, 61-62 (Bankr. E.D.N.Y. 2009).

In this case, only some of the factors are met, but the Court finds that those factors weigh in favor of stay relief. First and foremost, factor number four, whether a specialized tribunal with the necessary expertise has been established to hear the cause of action, weighs heavily in Noeske's favor. The division of property in a divorce action "is uniquely a problem of interpretation and application of the domestic relations laws of the State of Colorado as expressed in [Colo. Rev. Stat.] § 14-10-113." *In re Fisher*, 67 B.R. 666, 669 (Bankr. D. Colo. 1986). The division is equitable and often complex, done after consideration of multiple factors, including "the contributions of each spouse, the value of property set apart to each spouse, the economic circumstances of each spouse, and any increase, decrease, or depletion in the value of any separate property during the marriage." *In re Marriage of Jones*, 812 P.2d 1152, 1154 (Colo. 1991). The state court presiding over the Divorce Action, although not technically a specialized tribunal, has significant expertise and experience in handling such domestic relations

matters. As noted by many other bankruptcy courts, "[i]t is appropriate for bankruptcy courts to avoid incursions into family law matters out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters." *MacDonald v. MacDonald (In re MacDonald)*, 755 F.2d 715, 719 (9th Cir. 1985).

Furthermore, the dissolution proceeding has been pending in state court for over a year. The state court has already made preliminary rulings on child support and maintenance, and thus is familiar with the facts and circumstances of Debtor's and Noeske's domestic situation. A final hearing date has been set in the state court. Thus, it would serve judicial economy (factor number ten) to have the state court proceed to final orders on the division of property.

Although it is true that it is the province of the bankruptcy court to determine what is property of the estate, the nature and extent of the Debtor's legal and equitable interests in property are determined by state law. *See Butner v. United States*, 440 U.S. 48, 55 (1979). Because a divorce action was pending at the time Debtor filed his bankruptcy petition, a determination of Debtor's property interests necessarily requires a division of marital property. The state court is best situated to complete this task. Thus factor one weighs in favor of stay relief. The court is mindful that the Divorce Action is connected to Debtor's bankruptcy case (factor number two), as both actions necessarily involve the Debtor and his property. Nevertheless, the court does not believe relief from stay will unnecessarily interfere with the bankruptcy case. This court will retain its jurisdiction to adjudicate the impact of the state court's division of property on the bankruptcy case. Stay relief will be limited to the entry of judgment in the state court. Any enforcement of the judgment must occur in the bankruptcy court. Accordingly, factor number two also weighs in favor of relief from stay.

In counter-balance to these factors, Debtor asserts that relief from stay would prejudice creditors because the state court might not consider the interests of creditors in making its property division, nor the allegations of fraudulent transfer. The interaction between divorce proceedings and creditor interests is murky and this court has found a dearth of case law addressing the issue. Under the Colorado Uniform Dissolution of Marriage Act, however, the state court's task in a dissolution action is achieving an equitable division of property *between spouses*–not to determine or adjudicate third party interests in that property. *See* Colo. Rev. Stat. § 14-10-113. It is unlikely that a state court would, in the normal case, consider or attempt to determine third party interests or claims to the property it divides between spouses. Thus, outside of a pending bankruptcy case, the rulings of the divorce court would not preclude a subsequent action by a creditor against a debtor, his spouse, or both of them. *See In re Guinn's Marriage*, 522 P.2d 755, 757 (Colo. App. 1974) (not selected for official publication) (divorce court properly denied motion to intervene in divorce action filed by husband's former employer where divorce decree did not impede attempted intervenor's right to bring independent action for constructive trust on the land awarded to wife). This would also be true of avoidance claims brought by the Chapter 13 trustee as the representative of the interests of creditors in a debtor's case. *Cf. In re Fordu*, 201 F.3d 693, 704-06 (6th Cir. 1999) (the trustee in bankruptcy represents the interests of creditors and was not in privity with the debtor in debtor's state court marital dissolution proceeding). Those avoidance claims, if any, could be heard by this court or any

other court of competent jurisdiction. Accordingly, the interests of creditors will not be unduly prejudiced by stay relief.

The Debtor's strongest argument against allowing the Divorce Action to continue is the possibility of piecemeal litigation over the same property. For example, assume the following facts: a debtor holds title to heavily encumbered real property and his non-filing spouse holds title to an airplane free and clear of any liens. In a divorce action, the court decides to leave the parties as they are, with husband retaining the real estate and wife keeping the plane. Then a creditor sues the wife, claiming that she received title to the plane from her husband as part of a fraudulent conveyance. The creditor wins its suit and now she is left with no assets. She returns to the divorce court to ask them to reconsider the division of the marital property in a way that gives her a fair split of the remaining assets. In this example, no less than three contested hearings are held on the same assets.

On the other hand, consider the actual filings of the Debtor in this case. They belie any honest attempt to have this Court determine in one forum the interests of both Noeske and the creditors. The Debtor has converted his case to a Chapter 13 proceeding, despite the fact that the real estate he owns is subject to over $2 million in secured debt. Because only his wife signed the promissory note for the secured debt, he claims he has not exceeded the debt limitations for a Chapter 13 filing set forth in § 109 of the Bankruptcy Code.[1] He has proposed a Chapter 13 plan that acknowledges over $2 million in assets, but proposes to pay his creditors less than $30,000. Undoubtedly this plan is premised on a belief that the Debtor can keep all the assets and leave his non-filing spouse with all the debts. His plan indicates no intention to pursue any fraudulent conveyances against his wife because he claims 100% ownership of all the assets, even those presently titled in her name. The Debtor's obvious intent is to use this bankruptcy proceeding, not only as a shield against his creditors, but also as a sword against his wife.

The unfortunate facts of this case, and many others that involve the interplay between bankruptcy and divorce law, is that there is a need to adjudicate two separate claims to the marital assets: the claims of the spouses and the claims of the creditors. Those interests are very different and the parties to the disputes are different. Therefore, "piecemeal litigation" may be inevitable. And when parties attempt to play games with their creditors, and with their former spouses, the layers of litigation will multiply to the point that only the attorneys will win in the end. But those added layers of litigation are a by-product of game playing. It should not distract this Court from acknowledging that, absent extraordinary circumstances, the divorce court is the best forum for the division of marital property. This court will retain its jurisdiction to adjudicate the impact of the state court's division of property in a manner that reflects the priorities established by the Bankruptcy Code. *See In re Taub*, 413 B.R. 55, 65-66 (Bankr. E.D.N.Y. 2009) (grant of limited relief from stay to proceed with divorce action adequately protected

---

[1] Noeske has filed a motion to dismiss based on, among other things, the Debtor's ineligibility to be a Chapter 13 debtor. The Court will address that issue in separate proceedings.

interests of creditors). Thus, this court concludes that the relevant *Curtis* factors weigh in favor of stay relief.

### III. Conclusion

For the reasons stated herein, the Motion is GRANTED to the extent that Noeske may proceed in the Divorce Action to conclusion and the entry of judgment, with enforcement to take place in this Court.

DATED this 3rd day of March, 2010.

BY THE COURT:

*Elizabeth E. Brown*

Elizabeth E. Brown
United States Bankruptcy Judge